**Victor R. ZIEGLER, Sr., Petitioner,**

v.

**DEPARTMENT OF THE INTERIOR, Respondent.**

No. 03–3143.

United States Court of Appeals, Federal Circuit.

DECIDED: July 11, 2003.

Before MAYER, Chief Judge,
MICHEL, and PROST, Circuit Judges.

PER CURIAM.

Victor R. Ziegler, Sr. petitions for review of two decisions of the Merit Systems Protection Board ("Board"), both effective March 8, 2002, dismissing his appeal of his allegedly involuntary resignation, Docket No. DE–0752–02–0050–I–1, 93 M.S.P.R. 308, 2002 WL 31875105, and his alleged constructive demotion, Docket No. DE–0752–02–0051–I–1. Because the Board

correctly determined it did not have jurisdiction over either appeal, we *affirm.*

## BACKGROUND

The Bureau of Indian Affairs ("BIA") employed Ziegler as a Supervisory Police Officer, GS–083–10, until April 4, 1999. In early 1999 BIA Internal Affairs began investigating Ziegler in response to the Crow Creek Sioux Tribal Council's complaints of BIA officer misconduct. On February 16, 1999, the BIA removed Ziegler's supervisory duties and placed him on a day-shift patrol. On March 31, 1999, BIA investigators ordered Ziegler to submit to an interview regarding the allegations against him. Later that same day, Ziegler submitted a letter resigning his position. The resignation became effective on April 4, 1999.

Thereafter Ziegler raised the subjects of this appeal in complaints before the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed both Ziegler's complaint of forced resignation and his complaint of prohibited discrimination in non-selection for promotion. Subsequently, Ziegler filed two appeals with the Board. The first alleged that his resignation was involuntary. The second alleged that he had been constructively demoted when he was placed on patrol duty. The Board dismissed both appeals because it found it did not have jurisdiction. Ziegler petitioned the full Board for review. In its decision dated December 18, 2002, the full Board joined the appeals and denied both Ziegler's petitions for review. Ziegler timely appealed to this court.

## DISCUSSION

We must affirm the Board's decisions unless they are: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regu-

lation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). Whether the Board possesses jurisdiction to entertain an appeal is a legal issue we review *de novo*. *Hogan v. Dep't of the Navy*, 218 F.3d 1361, 1364 (Fed.Cir.2000).

I

■ Ziegler makes several arguments for why his resignation was not a result of free choice. First, Ziegler argues his resignation was not a result of free choice because he was under the threat of investigation and possible removal. The case law holds, however, that this is only the case where the "agency knew that the reasons for the threatened removal could not be substantiated." *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed.Cir.1987). The Board found that the "agency reasonably relied on information it received from the Crow Creek tribal council in order to open an investigation into possible misconduct by [Ziegler]." This is supported by substantial evidence, including documentation of the complaints by the Tribal Council and documentation of the BIA investigation. Further, Ziegler "was familiar with his adverse action appeal rights from past experience, as he had previously successfully adjudicated agency disciplinary charges." Therefore, he knew he could submit to the investigation and challenge any adverse action later. In any event, "the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary." *Dorrall v. Dep't of the Army*, 301 F.3d 1375, 1381 (Fed.Cir.2002) (quotation and citation omitted).

Ziegler next argues that his resignation was somehow influenced by his possible violations of the Hatch Act or the agency-wide reorganization of the BIA police force. First, Ziegler's argument that the reorganization was contrary to Congress' "intent," as expressed in 25 C.F.R. § 12.4, does not persuade us that his resignation was involuntary. As the Board noted, the reorganization was a presidentially mandated, bona fide management action. That this action imposed higher standards on BIA officers does not make Ziegler's resignation involuntary. Second, Ziegler argues he was pressured as a result of his tribal political activities possibly violating the Hatch Act. However, as noted above, if Ziegler believed his actions were lawful and led to an impermissible dismissal, he could simply have challenged his removal.

Lastly, Ziegler argues his resignation was not voluntary because he underwent knee surgery on March 30, 1999—one day prior to his resignation and two days prior to his scheduled interview. As the Board found, however, Ziegler could have either requested his interview be rescheduled or even attempted to withdraw his resignation before it became effective. In short, there is no evidence that his knee surgery so affected his thinking as to make his resignation involuntary.

Because we reject the arguments discussed above and any others raised in Ziegler's briefing, we affirm the Board's conclusion that it did not have jurisdiction over Ziegler's separation by resignation.

II.

Ziegler asserts that his position (Supervisory Police Officer GS–083–10) was reclassified and advertised as Supervisory Criminal Investigator (GS–1811–9/11/12) or Supervisory Police Officer (GS–0083–9/10/11/12) in December 1998. Ziegler alleges that he applied for the position when it was advertised and that, after resigning on April 4, 1999, he was not selected for the position on June 25, 1999. Ziegler also argues he was "removed" from his supervi-

sory duties and placed on day-shift patrol on February 16, 1999. Essentially, then, Ziegler argues he was constructively demoted when he was shifted to patrol duty and when he was not selected for the newly-created positions on June 25, 1999.

■ We agree with the Board that there was no constructive demotion. First, Ziegler has not shown that he was permanently reassigned. We agree with the Board that this type of temporary change in duties with no reduction in grade or pay is not an action appealable to the Board. *Sarver v. Dep't of the Treasury*, 20 M.S.P.R. 499, 501 (1984); *Russell v. Dep't of the Navy*, 6 MSPB 585, 6 M.S.P.R. 698, 711 (1981). Second, Ziegler cannot show that his position, Supervisory Police Officer, was upgraded to correct a classification error. *Welch v. Dep't of the Army*, 323 F.3d 1042, 1044 (Fed.Cir.2003) ("[F]or there to be a constructive demotion under the Board's standards, the higher grade must result from a classification error or a change in classification standards, and not from a planned management action."). Therefore, under *Welch*, Ziegler has not shown a constructive demotion as a result of the reclassification.

Because we reject the arguments discussed above and any others raised in Ziegler's briefing, we affirm the Board's conclusion that it did not have jurisdiction over Ziegler's resignation.

### III

Ziegler also argues that the MSPB "failed to take into account consideration of the fact that the agency had violated the veteran preference laws" and that the MSPB "incorrectly decided not to honor his discovery request." First, with respect to the alleged violations of the veterans' preference laws, the Board properly rejected the claim, for the reasons it stated, and advised Ziegler how to properly advance those claims should he so choose. In addition, as the Board had no jurisdiction over either appeal, it could not have adjudicated his veterans' preference rights anyway. Second, we also think the Board did not abuse its discretion in rejecting Ziegler's discovery request. *See, e.g., Curtin v. OPM*, 846 F.2d 1373, 1375 (Fed.Cir. 1988). The Board ordered some of the discovery requested by Ziegler, but decided that other discovery requested was not relevant or should be obtained from other sources. Given the Board's reasoning and the deferential standard of review, we cannot overturn the decision to deny some of Ziegler's discovery requests.

### CONCLUSION

For all the reasons stated herein, we affirm the Board's determination that it lacked jurisdiction to hear Ziegler's appeal.